TIMOTHY D. BARROW, ESQ.
Grist Mill Square, Suite 3
148 Main Street
Lebanon, New Jersey 08833
(908) 236-2229
Attorney for Plaintiff

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

| | | |
|---|---|---|
| RLI CORP., subrogee of AmerisourceBergen Corp., | : | CIVIL ACTION 10-2161 HON. MARY L. COOPER |
| Plaintiff, vs. | : | BRIEF IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEF. FEDEX |
| FEDEX GROUND PACKAGE SYSTEM, INC., | : | GROUND'S MOTION FOR PARTIAL SUMMARY JUDGMENT |
| Defendant. | : | |

---

MOTION RETURNABLE:   DECEMBER 6, 2011

PLACE: U.S. District Court – District of New Jersey at Trenton, New Jersey

SUPPORTING PAPERS: (a) the within Brief In Support of Pl. Opposition, Certification of Timothy D. Barrow with annexed Exhibits 1, 2, 3, 4 & 5, Pl, Response to Def. FedEx Ground's Local Civ. R. 56 Statement of Material Facts, Pl. L. Civ. Rule 56 Supplemental Statement of Disputed Material Facts In Support of Opposition and (b) Plaintiff's L. Civ. Rule 56 Statement of Material Facts Not In Dispute and accompanying Appendixes, the prior Certification of Joseph. E. Cataneo filed in support of the concurrent Pl. Motion for Summary Judgment as well as Defendant's Response To Pl. Rule 56 Statement of Material Facts.

s/ Timothy D. Barrow

TIMOTHY D. BARROW
Attorney for Plaintiff,
RLI CORP.

Dated: November 22, 2011
    Lebanon, New Jersey

## I. PRELIMINARY STATEMENT

Upon review of Defendant FedEx Ground's motion for partial summary judgment, it is evident that to be successful in its defense asserting its claimed limitation of liability that this interstate motor carrier will have to persuade the Court to rely on many outdated or inapplicable cases, disregard basic contract law principles, and ignore the seismic deregulation shift brought about by the ICC Termination Act of 1995 (ICCTA) concerning motor carrier's tariffs.

Plaintiff RLI Corp. shall demonstrate to the Court that the new case law requires a contract analysis when considering tariff limitations of liability being imposed by motor carriers. Such contract analysis shall lead to the conclusion that FedEx Ground's claimed limitation of liability and policy applying declared value (or the lack thereof) are unenforceable against the cargo owner/consignee AmerisourceBergen (hereinafter "ABC") and its subrogated insurer Plaintiff RLI Corp. in regard to the two subject shipments of pharmaceuticals that were destroyed. The conclusion to obviate this motor carrier's sole defense will be further supported when scrutinizing FedEx Ground's attempt to impose its liability limitation and declared value policy through the use of a proxy - shipper Bristol-Myers Squibb (hereinafter "BMS") that should also fail when closely examining the latent ambiguities contained within shipping documents and contracts entered between them and the deposition testimony obtained in regard to same.

The end result should be a denial of the motion for partial summary judgment by FedEx Ground because this motor carrier has clearly overreached due to its blinding desire to avoid full liability provided for by the Carmack Amendment to the Interstate Commerce Act for these two cargo losses.

## II.   LEGAL ARGUMENT

### A.   Post-ICCTA Impact Upon Motor Carrier Tariffs And Limitations of Liability

In the pre-1995 interstate motor carrier industry, rates (and other conditions) were established by tariffs filed with the Interstate Commerce Commission known as the "filed rate doctrine". However, "[t]he ICC Termination Act, 109 Stat. 803 (1995), abolished the tariff filing requirement and the filed rate doctrine, and it canceled the legal effectiveness of most extant tariffs." *Tempel Steel Corp. v. Landstar Inway, Inc.*, 211 F.3d 1029, 1030 (7th Cir. 2000)(internal citations omitted). "Today carriers adopt standard contractual terms, which some call 'tariffs' out of habit, but which have no effect apart from their status as contracts." *Id*. The Seventh Circuit in *Tempel Steel* observes that "[b]efore the 1995 amendments, provisions in tariffs usually governed whether shippers had actual, constructive or no notice; that's what the filed-rate doctrine meant." *Id*. at 1031. When considering the motor carrier's "tariff" limitation in 2000, the *Tempel Steel* Circuit Court states "[… ] it has long been established […] that actual notice is necessary for a limitation of liability to be enforced." *Id*. at 1030. In rejecting a constructive notice argument offered by the motor carrier, the Seventh Circuit determined that other than that "[s]ubsection (f) of the Carmack Amendment establishes one special rule for shippers of household goods, but neither this subsection nor any other language of the statute (or any regulation we could find) requires businesses to scrounge for limitations that have not been flagged by the carrier."   *Id*. at 1031.   As the "filed-rate" doctrine became defunct in 1995 for motor transport, citing to cases from the "filed-rate-doctrine era" will be of limited consequence since "it is hard to envisage how a shipper can be said to agree to a limitation of liability of

which it lacked actual knowledge." *Id.* In summary, "the Seventh Circuit has concluded that the filed rate doctrine 'is defunct for motor transport' and that with respect to most carriers, the 'tariffs' are nothing more than contracts and the terms limiting liability are enforceable only if the shippers had actual notice of them." <u>Chen v. Mayflower Transit, Inc.</u>, 315 F. Supp. 2d 886, 916 (N.D. Ill. 2004) *citing to* <u>Tempel Steel</u>, 211 F.3d at 1030-31. *See also* <u>Spray-Tek, Inc. v. Robbins Motor Transp.</u>, 426 F. Supp. 2d 875, 884 (W.D. Wis. 2006)("…today tariffs have no binding effect apart from their status as contracts.").

It is important to note that the <u>Chen</u> case involved a household goods carrier which along with carriers engaged in noncontiguous trade shall continue to file, publish or maintain tariffs required by statute. *See* 49 U.S.C. § 13702 - **Tariff requirement for certain transportation**. Hence, the modest qualification by the <u>Chen</u> court when it summarized <u>Tempel Steel</u> Circuit Court's conclusion *"that with respect to most carriers"* so-called "tariffs" are nothing more than contractual and not statutory. In the instant case, FedEx Ground is not subject to the aforesaid statutory requirement, but rather its invoked "Tariff 200-U" and the claimed limitation of liability within same are subject to the rigors of contract analysis *vis-à-vis* cargo owner/consignee ABC in whose shoes Plaintiff insurer/subrogee RLI stands.

B.  <u>FedEx Ground Tariff 200-U's Limitation of Liability Can Not Be Enforced Against Cargo Owner ABC and Its Subrogated Insurer RLI Corp. As A Matter of Contract Law Established By The Material Facts Herein</u>

1. *Cargo Owner ABC Was Not A Contracting Party To The FedEx Pricing Agreements & No Bill of Lading Was Issued In Regard To The Two Subject Shipments*

Taking into account the material facts associated with determining whether the claimed FedEx Ground limitation of liability can be invoked to deny Plaintiff's recovery of the full actual

loss under Carmack Amendment as subrogee of the cargo owner ABC is hard to fathom when reviewing the various shipping documents (or the lack thereof), the purported pricing agreement and amendments entered into between the FedEx Ground, Federal Express Corporation and Bristol-Myers Squibb. It is necessary to highlight the fundamental details contracts in place as well as those that are missing to determine the enforceability of FedEx Ground limitation of liability.

First, it is crucial to point out there is no bill of lading issued in regard to either of the two subject shipments. See Pl. L. Civ. Rule 56 Supplemental. Statement of Disputed Material Facts In Supp. of Opp. at 22.; see also Pl. Motion for SJ - Pl. L. Civ. R. 56 Statement of Material Facts Not In Dispute at 21. Defendant asserts while no traditional bill of lading was issued that a "receipt" was issued in the form of a shipping label for the two shipments. See Def. Response to Pl. Rule 56 Statement of Mat. Fact In Supp. of Pl. Mot. For S.J at 21. Although a bill of lading can often operate as a receipt for goods the converse is not necessarily true because a receipt is not a bill of lading as the two are distinguishable when transporting interstate cargo.

Specifically, "a bill of lading operates as both a basic transportation contract between a consignor and a carrier and as a receipt." Estes Express Lines , Inc. v. Macy's Corp. Svcs., 2010 U.S. Dist. LEXIS 6926 (D.NJ January 28, 2010) at * 17 (citing to S. Pac. Transp. Co. v. Commercial Metals Co., 456 U.S. 336, 342 (1982); EF Operating Corp. v. Am. Bldgs., 993 F. 2d 1046, 1050 (3d Cir. 1993)). This District Court has observed that "[a] typical bill of lading includes the following information: it names the contracting parties, specifies the rate or charge for transportation, and sets forth the agreement and stipulations with respect to the limitations of the carrier's common-law liability in the case of loss or injury to the goods and other obligations assumed by the parties or to matters agreed upon between them." Macy's at *17-18 (internal quotations and citations omitted).

In our case, there is no evidence produced by Defendant FedEx Ground that the "receipts". i.e. shipping labels, for the two shipments contained "any rates or charge for transportation", or that the labels set forth the agreement and stipulations with respect to the limitations of the carrier's common-law liability in the case of loss or injury to the goods and other obligations assumed by the parties or to matters agreed upon between them." See Pl. L. Civ. Rule 56 Supplemental. Statement of Disputed Material Facts In Supp. of Opp. at 24, 25. Rather, only basic information such as names, addresses, zip codes, tracking Id # and container # derived from BMS purchase order information is transmitted by the labels that double as electronic receipts. See Pl. L. Civ. Rule 56 Supplemental. Statement of Disputed Material Facts In Supp. of Opp. at 24.

Taking into account BMS has issued bills of lading for other carriers when shipping truckloads, it is a glaring omission that no bill of lading was issued here for ABC's purchased pharmaceuticals shipped by BMS through FedEx Ground. See Pl. L. Civ. Rule 56 Supplemental. Statement of Disputed Material Facts In Supp. of Opp. at 23. With no bill of lading issued that should contain the typical information that makes it a transportation contract which discloses the prerequisite rates, charges, limitations of liability and other obligations assumed by the parties, it would stretch credibility to find that actual notice of any terms of the transportation would be imparted to ABC as the consignee in this circumstance. No "tariff" limitation, including FedEx Ground's Tariff 200-U, can be enforced as an agreed contractual term against ABC and its subrogated insurer RLI when same is not "flagged" by the motor carrier to bring attention to it where the bill of lading does not exist.

Second, any effort to bootstrap ABC to be a contracting party or beneficiary of the Pricing Agreement Amendment no. 109233 of November 2006 entered into and signed by FedEx Ground and Federal Express Corporation with BMS or the FedEx Pricing Agreement no. 109233 of February 4, 2004 signed by BMS and Federal Express Corporation similarly goes off the rails.